*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ABLE/MILES/POWELL/STOKES/THOMAS, Minors.

UNPUBLISHED
January 5, 2023

No. 360711
Wayne Circuit Court
Family Division
LC No. 2018-001242-NA

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor children, JLM, JAP, CS, and XAT,[1] pursuant to MCL 712A.19b(3)(b)(*i*) (parent caused injury or abuse), (b)(*ii*) (parent failed to prevent injury or abuse), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm).[2] On appeal, respondent argues that (1) the trial court erred by terminating her parental rights to the children at the initial dispositional hearing without providing reasonable reunification efforts when there were no aggravated circumstances, and (2) the trial court clearly erred by finding that termination of her parental rights was in the children's best interests.[3] For the reasons discussed in this opinion, we affirm.

---

[1] Although the trial court's order also terminated respondent's parental rights to DKA, the court later entered an order indicating that DKA was not intended to be included in the order because he had already been placed in a legal guardianship. Accordingly, respondent's parental rights to DKA are not at issue in this appeal.

[2] The trial court also terminated the parental rights of the fathers of CS, DKA, and JAP. The parental rights of the father of JLM and XAT were previously terminated. See *In re Miles/Thomas, Minors*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2020 (Docket No. 349940). None of the fathers are involved in this appeal.

[3] In her brief on appeal, respondent addresses a third issue, which is not raised in the statement of questions presented and, therefore, is abandoned. See *In re Rippy*, 330 Mich App 350, 362 n 5; 948 NW2d 131 (2019). Respondent contends that the trial court erred by failing to inform her of

## I. FACTS AND PROCEEDINGS

This case arises from a petition seeking termination of respondent's parental rights to the children at the initial disposition. The children were removed from respondent's care on the basis of allegations of neglect and a fire that resulted in the death of respondent's five-year-old daughter, ZEH. The petition alleged that Children's Protective Services (CPS) learned that the cause of the fire was an improper electrical hookup and that the structure was equipped with "an illegally accessed electrical utility service." Respondent confirmed in an interview with CPS that the electricity to the home was connected illegally. JAP, who was nine years old, disclosed during a Kids Talk Interview that the home had no water and no plumbing, and that two other fires had previously occurred at the home. JAP also said that respondent did not make attempts to awaken or get ZEH during the fire. The petition alleged that respondent failed to prevent the risk of harm to the children, failed to provide adequate shelter, and failed to protect the children from harm. The petition further alleged that there had been several prior contacts with CPS, including in 2005 (a drug raid was conducted and guns, drugs, and deplorable living conditions were found), 2014 (medical neglect of ZEH, who was severely underweight and suffered from severe diaper rash), and 2018 (allegations of sexual abuse against the father of JLM and XAT). The petition requested that the trial court exercise jurisdiction over the children under MCL 712A.2(b)(1), (2), and (3), and terminate respondent's parental rights to the children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j).

At the time of the preliminary hearing, DKA was in a guardianship with his great aunt. The other children were staying with a relative as part of a safety plan, but they would not be able to remain with that relative and would be placed in foster care. After the preliminary hearing, the trial court found that aggravated circumstances existed and, therefore, reasonable reunification efforts were not required. After more than a year of hearings, primarily related to the fathers of the children, respondent entered a plea to the jurisdictional grounds and the statutory grounds for termination. In support of the plea, the trial court admitted the arson report related to the fire, which concluded that the cause of the fire remained undetermined, but was most likely accidental, originating from the make-shift electrical circuitry. The trial court also admitted the postmortem report of ZEH, which concluded that the cause of death was thermal body burns. The parties indicated that they were satisfied that the trial court complied with the court rules and were satisfied

---

her right to request an in-person hearing, which violated her due-process right to confront witnesses in person. Even if this issue had not been abandoned, it is not supported by the record. The record discloses that respondent initially agreed to a Zoom hearing and then requested an in-person trial, but subsequently she and her attorney ultimately agreed to a Zoom trial. Then, at the plea proceeding, respondent's attorney again indicated that they did not object to the proceeding being conducted via Zoom. At the best-interest hearing, the trial court also noted that there was no objection to the hearing being held via Zoom. In sum, there is no evidence that respondent was not informed of her right to an in-person hearing, and the record clearly discloses that she waived this right by agreeing to conduct the proceedings via Zoom. See *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019).

with the factual basis for the plea. The trial court ordered a Clinic for Child Study evaluation regarding the children's best interests.

At the best-interest hearing, the trial court admitted the Clinic for Child Study Report. Respondent testified that she had suitable housing for the children and an income, had completed parenting classes, and was visiting with the children. She loved the children, felt bonded with them, and wanted to plan for their return. Respondent testified that other people lived at the home when the fire occurred, and she denied connecting the electricity illegally or having knowledge of the electricity being connected illegally. Respondent also denied her cousin's statements in the Clinic for Child Study Report that the children did not attend school regularly or receive proper medical care. Respondent further denied that there had been other fires at the home, but admitted that there was no water service.

The trial court found that respondent had recently taken positive steps, but her history was troubling and the children needed ongoing stability. The trial court also found that respondent loves her children and they love her, and it did not object to ongoing contact between respondent and the children, but it believed that the children had been at risk because of their living arrangements. Conversely, the children were thriving in the current placements. Accordingly, the trial court found that it was in the children's best interests to terminate respondent's parental rights, even though they were placed with relatives.

## II. AGGRAVATED CIRCUMSTANCES

Respondent first contends that there were no aggravated circumstances to excuse petitioner from providing reasonable reunification services and to justify termination of her parental rights at the initial dispositional hearing. We conclude that respondent waived this issue by entering a no-contest plea to the statutory grounds for termination.

This Court reviews for clear error a trial court's factual findings. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). This Court reviews de novo the interpretation and application of statutes. *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020).

"Reasonable efforts to reunify the child and family must be made in *all* cases absent aggravated circumstances." *In re Smith-Taylor*, ___ Mich ___, ___; 971 NW2d 657 (2022) (Docket No. 163725); slip op at 1 (quotation marks and citation omitted). "Under MCL 712A.19a(2)(a), there must be a judicial determination that the parent has subjected the child to aggravated circumstances before the Department is excused from making reasonable efforts." *Id.* at ___; slip op at 1 (quotation marks omitted). "Aggravated circumstances justifying a petition seeking termination of parental rights at initial disposition under MCL 712A.2 are triggered when a parent 'has abused the child' in one of the ways delineated in MCL 722.638(1)(a)." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 4.

When a respondent argues that reasonable services were not offered, the argument ultimately relates to the issue of sufficiency of the evidence for termination of parental rights. See

*In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005) ("Although respondent has not expressly challenged the sufficiency of the evidence for termination of his parental rights, his contention that reasonable services were not offered ultimately relates to the issue of sufficiency."). In this case, however, respondent entered a no-contest plea to the statutory grounds for termination. Therefore, respondent's underlying argument that there is insufficient evidence to support termination is directly contrary to her plea of no contest. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). Respondent pleaded no contest to the statutory grounds for termination under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j), her attorney expressed satisfaction with the factual basis for the plea, and respondent does not claim any irregularity pertaining to her plea or otherwise challenge the validity of her plea. "Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute." *Id.* Accordingly, this issue is waived.

### III. BEST INTERESTS

Respondent also argues that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014); MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713.

"The trial court should weigh all the evidence available to determine the children's best interests." *Id.* The trial court "should consider a wide variety of factors," including: "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality," "the advantages of a foster home over the parent's home[,]" "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 713-714 (quotation marks and citations omitted). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citation omitted).

The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. The trial court expressly acknowledged that respondent and the children had a bond and that the children were placed with relatives, but it found that termination was nonetheless proper. The record establishes that respondent had a bond with the children and made substantial efforts on her own after the petition was filed in this case. She was visiting the children, had obtained housing and employment, and had completed parenting classes. Nonetheless, as the trial court found, she had put the children at risk of harm because of her living arrangements, including living in a home with no water or plumbing and an illegal electricity connection, which resulted in a fire and the death of one of her children. Although respondent denied any knowledge of the illegal connection when she testified at the best-interest hearing, she previously admitted during a CPS interview that the electricity was connected illegally. She also admitted that there was no water service.

There was also other evidence of neglect, including that respondent did not provide the children with proper medical care or send them to school, although respondent denied these allegations. The caseworker and relative caregivers reported that some of the children had developmental delays or were behind academically. Respondent also had prior CPS contacts for failure to protect, physical neglect, and abuse, and guns, drugs, and deplorable living conditions were previously found in the home. There were also reports that respondent had failed to protect the children from sexual abuse. Despite the prior CPS contacts and services, respondent again failed to protect the children from harm. The children were doing well in their placements and being provided with stability and permanency, which respondent was not likely to provide given her history. The trial court properly considered that the children were placed with relatives and expressed no objection to respondent having contact with the children, but it found that termination of respondent's parental rights was in the children's best interests. Considering the record as a whole, the trial court's finding is not clearly erroneous.

While respondent contends that the trial court failed to consider each child individually, there is no indication that the best interests of the children significantly differed. See *In re White*, 303 Mich App at 715. A trial court does not err simply by failing to "explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id*. at 716. Respondent does not identify any individual circumstances of the children that the trial court failed to consider.

Respondent also contends that there was no indication that the children will be placed together if adopted. However, caselaw merely indicates that, "[a]lthough in most cases it will be in the best interests of each child to keep brothers and sisters together . . . , if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012) (quotation marks and citation omitted). In this case, the trial court was aware that the children were not placed together, given that it had read the Clinic for Child Study Report, which discussed their placements, but it still found that termination of respondent's parental rights was in their best interests. Because reunification with respondent in a single home was not a viable option, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests despite their separate placements.

## IV. CONCLUSION

The trial court did not err by terminating respondent's parental rights. We affirm.


/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan