# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
December 11, 2018

*In re* Z. C. CHASTON BARRON, Minor.

No. 344084
Clare Circuit Court
Family Division
LC No. 15-000107-NA

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions that led to the adjudication), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm).[1] We affirm.

## I. BACKGROUND

In December 2015, when the minor child was six weeks old, the Department of Health and Human Services (DHHS) petitioned to remove him from respondent's home because of domestic violence between respondent and the child's father, drug abuse by both parents, and respondent's inability to care for the child on her own because of a cognitive disability. Respondent participated in services for more than two years, but did not make significant progress. She participated in substance abuse counseling, but continued to test positive for marijuana use without possessing a medical marijuana card. She also tested negative for her prescribed drugs, which apparently were being consumed by the child's father who tested positive for the drugs. She did not benefit from parenting education, did not complete individual or family counseling, and was unable to demonstrate the ability to parent on her own. In October 2017, DHHS updated the parent-agency treatment plan to provide alternative services and provide respondent more support because of her intellectual disability. Respondent nonetheless failed to progress, and DHHS ultimately filed a supplemental petition to terminate her parental rights. After a termination hearing in May 2018, the trial court found statutory grounds to

---

[1] The parental rights of the minor's father were also terminated in the same order, but he is not a party to this appeal.

-1-

terminate respondent's parental rights and found that termination was in the child's best interests. Respondent now appeals, arguing that the trial court erred by finding that clear and convincing evidence supported the statutory grounds.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews for clear error the trial court's determination that a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* (quotation marks and citation omitted).

### B. STATUTORY GROUNDS

The trial court may terminate parental rights when at least one statutory ground has been proven by clear and convincing evidence. MCL 712A.19b(3); *In re Moss*, 301 Mich App at 80. At the time of the termination, the applicable statutory grounds provided for termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[2]
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3)(c)(*i*), (g), (j).]

---

[2] MCL 712A.19b(3)(g) was amended, effective June 12, 2018, by 2018 PA 58.

The trial court took jurisdiction in this case because of domestic discord between respondent and the child's father, the parents' drug abuse, and respondent's inability to care for the child because of her cognitive disability. She received approximately 28 months of services, including a psychological evaluation, individual therapy, substance abuse therapy, parent education, visitation support, and couples counseling. In October 2017, in light of *In re Hicks/Brown*, 500 Mich 79; 893 NW2d 637 (2017),[3] petitioner reevaluated and adapted services to better accommodate respondent's cognitive disability. After the extra services and time afforded to respondent, multiple witnesses, including the foster care worker, parenting time supervisor and educator, and respondent's therapist, testified that she had failed to benefit from the services and opined that she could not parent the child on her own. Under these circumstances, termination under MCL 712A.19b(3)(c)(*i*) was firmly supported.

Termination was also supported under factor (g). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Respondent was offered extensive services and extra time to comply and benefit from them, but only participated in some of the offered services. She did not complete individual counseling, and though she participated in parent education and attempted to implement suggestions, she was unsuccessful, and showed "minimal progress" overall in services. Respondent's inability to benefit from services established that she could not provide proper care and custody and that there was no reasonable expectation that she would be able to do so within a reasonable time. MCL 712A.19b(3)(g).

Termination was also supported under factor (j). The reasonable likelihood of harm contemplated by this factor encompasses both physical and emotional harm. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Shortly after the child was removed from respondent's care, he was diagnosed with failure to thrive, and his pediatrician testified that this was caused by the child not getting enough to eat. Throughout the case, respondent struggled with understanding how to provide the child with proper nutrition. Evidence also suggested that respondent had trouble recognizing safety issues in the home and would likely have difficulty handling an emergency situation. Adequate evidence therefore demonstrated that there was a reasonable likelihood that the child would suffer physical harm if returned to respondent. Furthermore, there was evidence that respondent did not have a bond with the child and that she was unable to understand his emotional cues, which supports the finding that he could be emotionally harmed if returned to respondent's care. Therefore, the trial court did not clearly err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(j).

On appeal, respondent contends that the trial court improperly based its decision on the testimony of the psychologist, Dr. Barnes, who evaluated respondent throughout the case. She

---

[3] "[E]fforts at reunification cannot be reasonable under the Probate Code unless the Department modifies its services as reasonably necessary to accommodate a parent's disability." *In re Hicks/Brown*, 500 Mich at 90. Respondent in this case does not argue that she was not afforded reasonable accommodations.

contends that Dr. Barnes' opinion that she could not safely parent the child because of her cognitive impairment was speculative because Dr. Barnes admitted that he had never evaluated respondent's "adaptive capabilities." Dr. Barnes, however, testified that respondent probably had stronger adaptive capabilities than her IQ tests indicated. Thus, Dr. Barnes actually gave respondent the benefit of the doubt, that she has strong adaptive capabilities and could benefit from services. Moreover, the trial court did not rely exclusively upon Dr. Barnes' testimony, but instead relied upon the testimony of multiple witnesses, all of whom concluded that respondent did not have the capacity to parent the child, thereby providing ample evidence to support termination. Unfortunately, respondent did not benefit from services, despite the reasonable accommodations afforded to her based on her cognitive disability.

## B. BEST INTERESTS

The trial court also did not err in concluding that termination was in the best interests of the child. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 114 (2012), citing MCL 712A.19b(5) and MCR 3.977(E)(4). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. In determining a child's best interests, the court should consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks and citation omitted). Other factors a court may consider are "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

In this case, the trial court found that respondent loved her child, but did not fully understand what it meant to be a parent. It also found that she could not care for herself and would be unable to care for a toddler, and that there was a lack of a parent-child bond. The child had been in the same foster home since he was removed from respondent's home at the age of six weeks, and his foster family was open to adopting him. The trial court considered relevant factors and did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola